## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN STINE, | ) |
| 14214 S. Haven Rd. | ) |
| Grandview, Missouri 64030 | ) |
| | ) |
|     Plaintiff, | ) |
| | )   **Case No.:** _11-cv-2319 KHV/GLR_ |
| v. | ) |
| | )   **Jury Trial Requested** |
| KELLOGG SALES COMPANY, | ) |
|     <u>Serve:</u> | ) |
|     The Corporation Company | ) |
|     112 SW 7th St., Suite 3C | ) |
|     Topeka, Kansas 66603 | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT FOR AGE & DISABILITY DISCRIMINATION & RETALIATION

COMES NOW Plaintiff John Stine ("Mr. Stine" or "Plaintiff") and for his Complaint against Defendant Kellogg Sales Company ("Kellogg" or "the company" or "Defendant") states and alleges:

## THE PARTIES

1.      Mr. Stine resides at 14214 S. Haven Rd., Grandview, Missouri 64030.  He is an employee of Kellogg who was hired by the company on or about July 14, 2008 as a line mechanic in Defendant's Kansas City, Kansas bakery.

2.      Mr. Stine is sixty-three years old.  When he was hired by Defendant, he was disabled within the meaning of the Americans with Disabilities Act ("ADA") and the ADA Amendment Act ("ADAAA") of 2008 due to a significantly arthritic hip condition which caused him to walk with a limp and have trouble standing for extended periods.

3.      Despite his disability, Mr. Stine performed the essential functions of his job as a

{166629.DOCX }

line mechanic without the need of an accommodation from Kellogg.

4.      At all times relevant herein, Kellogg served as Plaintiff's employer and Plaintiff was a full-time employee.

5.      Kellogg is a Michigan corporation with a principal place of business in Battle Creek, Michigan.  The company produces food products and operates a bakery in Kansas City, Kansas.  Defendant has over 30,000 employees nationwide.

6.      Kellogg is a covered entity under §101(2) of the Americans with Disabilities Act of 1990 ("ADA") and the Americans with Disabilities Act  Amendments Act of 2008, ("ADAAA")  an "employer" within the meaning of Age in Discrimination Employment Act of 1976 ("ADEA"), the Kansas Age in Discrimination Employment Act of 1983 ("KADEA") and the Kansas Act Against Discrimination of 1953 ("KAAD").

7.      At all times relevant herein, Kellogg had a collective bargaining agreement with the Bakery and Confectionery Workers Union ("BCWU").  Upon information and belief, the collective bargaining agreement between Kellogg and BCWU contained a procedure requiring Kellogg to post all job vacancies; a protocol for calling union employees back to work according to seniority after layoffs; a procedure returning union employees back to work after illness or injury; and, an agreement that union members who completed maintenance training from Kellogg would receive a pay increase.

8.      At all times relevant herein, Mr. Stine was a member of the BCWU.

## JURSIDICTION AND VENUE

9.      Mr. Stine brings this action against Kellogg pursuant to the ADEA, the ADA and the ADAAA because Kellogg discriminated against him based on his age and disability and retaliated against him for requesting that the workplace be free of discrimination.

10.     This lawsuit is also brought under the Kansas common law which prohibits employers from retaliating against employees for exercising their rights under the Kansas Workers' Compensation Act ("KWCA"); the KAEDA which prohibits discrimination and retaliation based on age; and, the Kansas Act Against Discrimination ("KAAD") which prohibits discrimination and retaliation based on disability.

11.     This Court has subject matter jurisdiction over the state law claims by virtue of this Court's supplemental jurisdiction under 28 U.S.C. § 1367.  The state law claims form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts, such that they are expected to be tried in one judicial proceeding.

12.     Original jurisdiction lies herein pursuant to 28 U.S.C. § 1331.

13.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Kellogg does business in this District and a substantial amount of the unlawful conduct giving rise to Plaintiff's claims occurred in this District.

14.     On or about March 22, 2010, Mr. Stine timely filed his initial "Charge of Discrimination" ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and on or about April 19, 2010, with the Kansas Human Rights Commission ("KHRC") based upon his claims of disability and age discrimination, harassment and retaliation.

15.     The matter was assigned EEOC Charge number 563-2010-00964. (A copy of the EEOC Charge is attached hereto as **Exhibit A.)**

16.     The EEOC terminated its processing of Mr. Stine's Charge and issued Mr. Stine his "Right to Sue" letter ("RTS") against Kellogg dated March 30, 2011.  This lawsuit is brought within ninety (90) days of the date of the EEOC letter. (A copy of the RTS is attached as **Exhibit B.)**

17.      Under the statutes cited *infra*, all requisite conditions precedent have been met.

## GENERAL ALLEGATIONS

{166629.DOCX }

18.     On or about July 14, 2008, Kellogg hired Mr. Stine to work as a line mechanic in the company's Kansas City, Kansas bakery.

19.     Due to an arthritic condition in Mr. Stine's left hip, he utilized a personally owned scooter to travel the line.  About a month after he started working for the company, an unknown person(s) vandalized his scooter by slashing the seat with an "X".

20.      On or about December 12, 2008, Mr. Stine was working on the line and slipped on cracker crumbs which were on the plant floor, striking his left hip on the hard ground.  Two plant supervisors witnessed Mr. Stine's fall, but they did not help him up, nor did they offer to help Mr. Stine.  Mr. Stine made a written report of the incident that very day.

21.     After Mr. Stine completed his shift that day, he returned home to find that his hip was swollen with a 12" long bruise.  He was extremely stiff and sore and took a few days off from work.  After a few days, Mr. Stine returned to work despite a constant pain in his left hip.

22.     In February 2009, Mr. Stine saw his primary care physician, Dr. Cristiano, and complained of continued pain in his left hip.  Dr. Cristiano gave Mr. Stine a cortisone shot and prescribed pain medication.

23.     Mr. Stine continued treatment under the care of Dr. Cristiano through April 2009.

24.     On or about May 19, 2009, Mr. Stine was getting ready for work and his left leg collapsed on him.  He sought the immediate treatment of Dr. Cristiano who restricted him from any work and ordered an x-ray and MRI of his left hip.  The MRI revealed several tears of his ligaments and the presence of cysts.

25.     Mr. Stine was unable to get copies of Kellogg's incident reports regarding the December 12, 2008 fall at the plant.  He hired attorney Mike Wallace to represent him in a workers' compensation claim against the company.

{166629.DOCX }

26.     In June 2009, Mr. Stine received treatment from Kellogg's workers' compensation physician, Dr. Gurba, for his left hip injury.  He had been off work without pay since May 19, 2009.  Kellogg defended Mr. Stine's workers' compensation claim and took his deposition.

27.     In July 2009, Kellogg accepted liability for Mr. Stine's worker's compensation injury that occurred on December 12, 2008.

28.     On or about August 28, 2009, Dr. Gurba performed left hip replacement surgery on Mr. Stine.  Mr. Stine was taken off of work by Dr. Gurba until December 17, 2009, when Dr. Gurba released Mr. Stine to return to work with a light duty restriction.

29.     Kellogg failed and refused to accommodate Mr. Stine and give him light duty work.

30.     Upon information and belief, Defendant provided a younger line mechanic light duty after that line mechanic fell on stairs and twisted his knee.

31.     On or about February 18, 2010, Mr. Stine saw Dr. Gurba (the company appointed doctor).  Dr. Gurba released Mr. Stine to return to work without any restrictions.  Mr. Stine notified Mary Mitchell, Defendant's workers' compensation claims vendor that he was able to return to work.  Ms. Mitchell immediately cut off Mr. Stine's workers' compensation benefits and advised Defendant's human resources department that Mr. Stine was able to return to work.

32.     Kellogg's made no effort to return Mr. Stine to work based on its prejudice and preconceived notions of Mr. Stine's condition.

33.     On or about February 23, 2010, Mr. Stine received a call from Mark Lafond, Defendant's human resources manager.  Mr. Lafond told Mr. Stine that he had some paperwork that Dr. Gurba needed to complete before Mr. Stine could return to work.

34.     Mr. Stine picked up Mr. Lafond's paperwork as soon as it was ready.   Mr. Lafond's paperwork included a cover letter stating that Defendant had "concerns" about Mr. Stine's health and his physical ability to perform his job.

35.     On or about February 25, 2010, Mr. Stine returned Defendant's paperwork signed by Dr. Gurba.

36.     On or about March 2, 2010, Mr. Stine received a call from BCWU Union Steward Otis Stevenson.   Mr. Stine told Mr. Stevenson that he wanted to return to work, but he had still not been called by Defendant to do so.   Mr. Stevenson asked Mr. Stine if he had filed a lawsuit against Defendant.   Mr. Stine responded that he wanted to return to work and Mr. Stevenson abruptly ended the call.

37.     On or about March 11, 2010, Mr. Stine filed the following union grievances against Defendant:  failing to return him to work on light duty after he was released by Dr. Gurba to do so; failing to return him to work on full duty after he was released by Dr. Gurba to do so; failing to pay him holiday pay for holidays missed when he was off work for his workers' compensation injury; refusing to give him the raise for completing the maintenance training program; failing to notify Mr. Stine of an engineering position that became available and giving the job to another person.

38.     Mr. Stine remained off of work because Defendant failed and refused to return him to work due to erroneously preconceived and illegal notion that Mr. Stine was unable to work due to his disability.   This also violated the union's collective bargaining agreement.

39.     Mr. Stine is the sole earner for his family.   The unpaid time off from work forced the Stines to seek public assistance from the government and charitable organizations.   The Stines nearly lost their home during this period.

{166629.DOCX }

40.     On or about March 22, 2010, Mr. Stine filed a Charge of Discrimination against Defendant with the EEOC and later the KCHR.

41.     On or about March 29, 2010, Defendant laid Mr. Stine off until on or about May 2, 2010.  Other union employees with less seniority than Mr. Stine were returned to work earlier in violation of the union's collective bargaining agreement.

42.     After Mr. Stine returned to work in May 2010, Defendant retaliated against him for filing Charges with the EEOC and the KCHR and for exercising his rights under the KWCA.

43.     The retaliation included harsher treatment than similarly situated employees, a failure by Defendant to follow Defendant's own progressive discipline policy and unwarranted reprimands, including a reprimand suspending Mr. Stine for one day.

44.     Additionally, upon information and belief, Kellogg's management and employees conspired to discipline Mr. Stine and to make it appear it was not related to his disability.

## COUNT I – DISABILITY DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF THE ADA, THE ADAAA  & THE KAAD FOR FAILURE TO ACCOMMODATE

45.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 44 as if fully set forth herein.

46.     The acts described above constitute disability discrimination and harassment in violation of the ADA and the ADAA.

47.     Mr. Stine suffers from a hip condition which is a physical impairment that substantially limits major life activities, including, but not limited to, walking, standing and working.

48.     Mr. Stine was a qualified individual under the ADA and the ADAA who could perform all of the essential functions of his line mechanic position with Defendant.

49.     Mr. Stine made numerous reasonable requests to return to work under light duty, but Defendant refused to return Mr. Stine to work in a light duty capacity because of its prejudices and preconceived notions of his conditions.

50.     The act of requesting to work with an accommodation is a protected activity under the ADA and the ADAAA.

51.     Defendant knew or should have known that Mr. Stine's physical hip impairment limited his ability to perform his job before Dr. Gurba released Mr. Stine to work without any restrictions.

52.     After it became known to Defendant that Mr. Stine had an impairment that caused a work limitation, Defendant owed a duty to provide Mr. Stine with a reasonable accommodation and/or return him to work as provided by the doctor's release.

53.     Defendant failed to seriously consider any reasonable accommodations after the limitation became known to Defendant.  This amounts to intentional discrimination, particularly when other Kellogg employees received accommodations to return to work on light duty.

54.     There is a causal connection between the protected activity of Mr. Stine requesting to return to work under light duty and the numerous adverse and damaging employment actions that Defendant engaged in and took against Mr. Stine.

55.     Defendant's act of imposing arbitrary restrictions that prevented Mr. Stine from working constitutes malice or reckless indifference to the federally protected rights of Mr. Stine.

WHEREFORE Plaintiff prays for judgment against Defendant on Count I of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by 42 U.S.C. 12112(b); for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and

{166629.DOCX }

punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

**COUNT II – DISABILITY DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF THE ADA AND THE KAAD BASED ON PLAINTIFF'S STATUS AS AN EPILEPTIC**

56.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 55 as if fully set forth herein.

57.     The acts described above constitute disability discrimination and harassment in violation of the ADA and the ADAAA.

58.     Mr. Stine suffers from a hip condition which is a physical impairment that substantially limits major life activities including working.

59.     Mr. Stine was a qualified individual under the ADA and the ADAA who could perform all of the essential functions of a line mechanic.

60.     Defendant knew or should have known that Mr. Stine's limitation due to his hip condition impeded his job performance.

61.     Defendant violated the ADA and the ADAAA by failing to take steps to seriously consider a reasonable accommodation and reasonably accommodate Mr. Stine.   Instead, Defendant took adverse and damaging employment actions against Mr. Stine by not returning him to work in either a light duty or full duty position.  Defendant's discrimination against Mr. Stine was based solely on an erroneously preconceived and illegal notion that Mr. Stine was disabled in violation of 42 U.S.C. § 12112(a).

62.     Defendant's act of having preconceived notions about Mr. Stine being disabled and not returning him to work when he was able to do so constitutes malice or reckless indifference to the federally protected rights of Mr. Stine.

WHEREFORE Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by 42 U.S.C. 12112(a); for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

### COUNT III – AGE DISCRIMINATION

63.     Mr. Stine reasserts and re-alleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     The acts described above constitute age discrimination in violation of the ADEA and the KADEA.

65.     Defendant discriminated against Mr. Stine based on his age and refused to give him accommodations that were given to younger similarly situated employees.

66.     This discriminatory conduct affected the terms, conditions and privileges of Mr. Stine's employment with Defendant.

67.     As a direct and proximate result of the adverse employment actions of Defendant, Mr. Stine lost wages, the value of fringe benefits and the opportunity to be gainfully employed. Mr. Stine suffered severe emotional distress as a result of not being able to return to work which caused him to be depressed and stressed.

WHEREFORE, Mr. Stine prays for judgment against Defendant on Count III, for a finding that he has been subjected to unlawful age discrimination prohibited by the ADEA and the KADEA; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages; for his costs

{166629.DOCX }

expensed; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

## COUNT IV – RETALIATION BASED ON AGE AND DISABILITY

68.     Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 67 as if fully set forth herein.

69.     The acts described above constitute retaliation in violation of the ADA, the ADAA, the ADEA, the KADEA and the KAAD.

70.     As fully detailed above, Defendant also retaliated against Mr. Stine based on his age and Defendant's perceived disability.

71.     The ADA, ADAAA and Kansas law expressly forbids employers from retaliating because of their disability or preconceived notions about the person's abilities.  The ADA, the ADAAA, the ADEA, the KADEA and the KAAD forbid employers from retailing against employees who are discriminated against based on their age, medical conditions and perceived disabilities.

72.     Defendant's conduct was outrageous and latent with evil motives and demonstrates a reckless indifference to Mr. Stine's rights.

73.     As a direct and proximate result of the adverse employment actions of Defendant, Mr. Stine lost wages, the value of fringe benefits and the opportunity to be gainfully employed. Mr. Stine suffered severe emotional distress as a result of not being able to return to work which caused him to be depressed and stressed.

WHEREFORE, Mr. Stine prays for judgment in his favor and against Defendant on Count IV of his Complaint, for a finding that he was retaliated against based on his age and perceived disability, and for an award of compensatory and punitive damages, including

{166629.DOCX }

damages to compensate him, for his costs expended; for his reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

## COUNT V – RETALIATION
## FOR FILING A WORKERS' COMPENSATION CLAIM

74.    Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 73 as if fully set forth herein.

75.    The acts described above constitute retaliation in violation of Kansas common law.

76.    Mr. Stine exercised his rights pursuant to the Kansas Workers' Compensation Act by filing a claim against Defendant after he sustained an on-the-job injury.  Specifically, Mr. Stine exercised his rights to obtain medical treatment, temporary total disability payments as a substitute for lost wages while he recovered from his injury and a permanent partial disability settlement based on the disability rating he received after reaching maximum medical improvement.

77.    Defendant retaliated against Mr. Stine and refused to return him to work based on their animus toward Mr. Stine for pursuing his workers compensation claim.

78.    Kansas common law expressly forbids employers from retaliating against employees who exercise any of their rights under the Kansas Workers' Compensation Act.

79.    Defendant's conduct was outrageous and latent with evil motives and demonstrates a reckless indifference to Mr. Stine's rights.

80.    As a direct and proximate result of the adverse employment actions of Defendant, Mr. Stine lost wages, the value of fringe benefits and the opportunity to be gainfully employed. Mr. Stine suffered severe emotional distress as a result of not being able to return to work which caused him to be depressed and stressed.

{166629.DOCX }

WHEREFORE, Mr. Stine prays for judgment in his favor and against Defendant on Count IV of his Complaint, for a finding that he was retaliated against for exercising his rights under the Kansas Workers' Compensation Act in violation of public policy and Kansas law, for an award of compensatory and punitive damages, including damages to compensate him, for his costs expended; including expert fees and expenses and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff  requests a trial by jury on all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.


Respectfully submitted,

WILLIAMS LAW LLC


/S:/ Michael A. Williams
Michael A. Williams   KS Bar No. 19124
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamslawllc.com
(o) 816-876-2600
(f)  816-221-8763

{166629.DOCX }